IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORDAN DENNEY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>DAVID E. WALLACE, THOMAS W. STOELK, DAVID E. SNYDER, MARK A. SNYDER, CHARLES C. NEAL, JOHN A. STALEY, IV, ANTHONY J. MENDICINO, EDWARD J. DIPAOLO, SUPERIOR WELL SERVICES, INC., NABORS INDUSTRIES LTD., and DIAMOND ACQUISITION CORP.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. |

CLASS ACTION COMPLAINT

## INTRODUCTION

1.     Plaintiff Jordan Denney individually and on behalf of all others similarly situated, respectfully brings this direct class action for violations of federal law and breaches of fiduciary duties against the herein-named defendants.

2.     This is a stockholder class action brought by plaintiff on behalf of the public holders of Superior Well Services, Inc. ("Superior Well" or the "Company") common stock against the Company, certain of its officer and directors, Nabors Industries Ltd. ("Nabors") and its subsidiary Diamond Acquisition Corp. ("Diamond").   This action arises out of defendants' efforts to sell the Company to Nabors at the unfair price of $22.12 per share in cash via a tender offer, followed by a second step merger ("Proposed Acquisition").

3.     Plaintiff brings this action to cure the repeated breaches of fiduciary duty by the Individual Defendants (as defined herein) and prevent further harm.  The Company's officers and directors have placed their own interests in securing continued employment and lucrative buyout packages ahead of their duty to ensure that Superior Well shareholders received the best price reasonably available for their stock.   In addition, they are omitting and/or misrepresenting material information in shareholder communications in an attempt to secure the tender by Superior Well's shareholders of their shares via the unfair Proposed Acquisition in violation of both federal and state law.

4.     On August 9, 2010, Superior Well announced that Superior Well and Nabors had entered into an Agreement and Plan of Merger dated August 6, 2010 ("Merger Agreement"). Pursuant to the Merger Agreement, Nabors commenced a tender offer to purchase all of the outstanding shares of Superior Well common stock for $22.12 per share in cash, followed by a second-step merger.   The tender offer is set to expire on September 8, 2010.

5.      The Proposed Acquisition's consideration of $22.12 fails to adequately value the Company and its future prospects.    In addition to announcing the Proposed Acquisition on August 9, the Company also announced its results for the second quarter of 2010.  The Company revealed that its revenue increased nearly 43% from the previous quarter and nearly 95% from the same quarter the previous year.  In addition, the Company's net income for the quarter was $6.1 million, compared to a net loss of $8.7 million in the previous quarter.  Analysts expected the Company's good fortune to continue, projecting a 575% earnings growth rate for Superior Well in the 2011 fiscal year.  Shareholders, unfortunately, were limited in their ability to benefit from this phenomenal quarter and the Company' future growth by the cap placed on the stock price by the consideration offered in the Proposed Acquisition.

6.      As revealed in the Schedule 14D-9 the Company filed with the Securities and Exchange Commission ("SEC") on August 12, 2010 (the "14D-9"), the sale process for Superior Well was flawed from its inception.  The Board of Directors (the "Board") cherry-picked its desired suitors, only permitting companies that it found "agreeable" to pursue a strategic transaction with the Company.  Notably, the Board only found "strategic" buyers agreeable, leaving out an entire class of potential buyers, financial buyers.  Further, once the Board found its favored suitor, Nabors, it refused to allow any other entity, strategic or financial buyer, to make a competing offer for the Company.

7.      As part of the Proposed Acquisition, the Board also agreed to numerous deal protection devices to ward off any other interested parties.  For example, the Board agreed to a $22.5 million termination fee and to reimburse Nabors and Diamond for up to $5 million in expenses.  Further, the Merger Agreement has a no-solicitation clause, which prevents the Board from actually properly shopping the Company.

8.     The Board also agreed to a "Top-Up Option" in connection with the Tender Offer. The Top-Up Option is impermissibly coercive and was agreed to in order to circumvent shareholders' right to vote on the Proposed Transaction.  Under the Top-Up Option, Nabors has the right to force the Company to sell it the amount of stock that combined with the amount Nabors acquires via the Tender Offer will equal one share more than 90% of the stock outstanding.  By acquiring one share more than 90% of the Company's outstanding stock, Nabors will be able to effectuate a short-form merger, dispensing with the requirement of a shareholder vote.

9.     Further, the Top-Up Option will cause significant dilution of the non-tendering shareholders' Company stock.  In any appraisal proceeding, a court will take this additional dilution into account, and thereby reduce the value of the non-tendering shareholders' stock accordingly.  Therefore, the Top-Up Option is also unduly coercive in forcing shareholders to tender their stock.

10.    Most troubling, however, is the scope of the misleading disclosures and omissions in the 14D-9.  Some of the material information that the 14D-9 omits and/or misrepresents in contravention of §§14(e) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and/or defendants' fiduciary duty of disclosure under state law includes information concerning:

(a)    key financial information used by management and its bankers in order to value the Company and the fairness of the Proposed Acquisition, including the full set of financial projections;

(b)    other strategic alternatives considered by the Board and the valuations placed on those other strategic alternatives;

(c)     conflicts of interest between Simmons & Company International ("Simmons") and the Company's shareholders; and

(d)     the affect of the Top-Up Option to which the Board agreed.

11.     While the Board is intent on cashing out the Company's shareholders at an unfair price, the Company's fiduciaries will receive immediate benefits from the closing of the Proposed Acquisition.   For instance, as part of the Proposed Acquisition, Superior Well's fiduciaries' restricted stock awards, totaling over 208,000 shares worth over $4.6 million, will vest immediately and be converted into cash payment.

12.     To remedy the defendants' breaches of fiduciary duty and other misconduct, plaintiff seeks, *inter alia*: (i) injunctive relief preventing consummation of the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders; (ii) a directive to the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of the Company shareholders; (iii) an injunction of the Proposed Acquisition until the Board discloses all material information in a non-misleading way; and (iv) rescission of, to the extent already implemented, the Merger Agreement or any of the terms thereof.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over all claims asserted herein pursuant to §27 of the 1934 Act for violation of §§14(e) and 20(a) of the 1934 act.

14.     Venue is proper in this District because the defendants regularly transact business within this District, because Superior Well has a principal place of business located in this District, or because defendants have committed the questionable conduct within this District. Defendants have extensive contacts with this District.

## PARTIES

15.     Plaintiff Jordan Denney is and at all material times hereto has been a holder of Superior Well common stock.

16.     Defendant Superior Well is a Delaware corporation that provides a wide range of wellsite solutions to oil and natural gas companies in the Appalachian, Mid-Continent, Rocky Mountain, Southeast, and Southwest regions of the United States, including primarily technical equipment and services and down-hole surveying services.  Upon completion of the Proposed Acquisition, Superior Well will become the wholly-owned subsidiary of Nabors.  Superior Well's principal executive offices are located at 1380 Rt. 286 East, Suite #121, Indiana, Pennsylvania.

17.     Defendant David E. Wallace ("Wallace") is Superior Well's Chairman of the Board and Chief Executive Officer and has been since March 2005.  Wallace co-founded Superior Well Services, Ltd., the predecessor to Superior Well and was its Chief Executive Officer from 1997 to March 2005.  Wallace entered into a tender and voting agreement with Nabors and Diamond.  Wallace received the following compensation from Superior Well in 2007, 2008 and 2009:

| Name and Principal Position | Year | Salary(1) | Stock Awards(2) | Non-Equity Incentive Plan Compensation(3) | All Other Compensation(4) | Total |
|---|---|---|---|---|---|---|
| David E. Wallace | 2009 | $435,964 | $ 60,825 | $     — | $18,551 | $515,340 |
| *Chairman of the Board and* | 2008 | 393,100 | 112,920 | 330,500 | 7,127 | 843,647 |
| *Chief Executive Officer* | 2007 | 309,500 | 161,175 | 100,000 | 19,229 | 589,904 |

In addition, upon completion of the Proposed Acquisition, Wallace will reap the following severance and change of control payments:

| Name | Benefit | Involuntary Termination(1) | Involuntary Termination During Change of Control Period(2) | Death and Disability(3) |
|---|---|---|---|---|
| David E. Wallace | Salary | $   867,000 | $   867,000 | $     — |
| | Bonus | — | — | — |
| | Equity Compensation | 382,551 | 382,551 | 382,551 |
| | Medical and Dental Continuation Coverage | 26,322 | 39,482 | — |
| | Total | $ 1,275,873 | $   1,289,033 | $ 382,551 |

18.     Defendant Thomas W. Stoelk ("Stoelk") is Superior Well's Vice President and Chief Financial Officer and has been since June 2005.

19.     Defendant David E. Snyder ("D. Snyder") is a Superior Well director and has been since March 2005.  D. Snyder was also a limited partner of Superior Well Services, Ltd.  D. Snyder entered into a tender and voting agreement with Nabors and Diamond.

20.     Defendant Mark A. Snyder ("M. Snyder") is a Superior Well director and has been since March 2005.  M. Snyder was also a limited partner of Superior Well Services, Ltd.  M. Snyder entered into a tender and voting agreement with Nabors and Diamond.

21.     Defendant Charles C. Neal ("Neal") is a Superior Well director and has been since June 2005.

22.     Defendant John A. Staley, IV ("Staley") is a Superior Well director and has been since June 2005.

23.     Defendant Anthony J. Mendicino ("Mendicino") is a Superior Well director and has been since August 2005.

24.     Defendant Edward J. DiPaolo ("DiPaolo") is a Superior Well director and has been since July 2006.

25.     Defendant Nabors is a Bermuda exempt land drilling contractor with approximately 542 actively marketed land drilling rigs.  Nabors conducts oil, gas, and geothermal land drilling operations in the U.S. lower 48 states, Alaska, South America, Canada, Mexico, the Caribbean, the Middle East, the Far East, Africa, and Russia.  Nabors also markets rigs for land workover and well-servicing in the United States and Canada; provides offshore platform workover and drilling rigs in the United States and multiple international markets; offers a wide range of ancillary well-site services; provides logistics services for onshore drilling

in Canada; and invests in oil and gas exploration.  Nabors's principal executive offices are located at Mintflower Place, 8 Par-La-Ville Road, Hamilton, HM08, Bermuda.

26.     Defendant Diamond is a Delaware corporation and a wholly-owned subsidiary of Nabors.  Upon completion of the Proposed Acquisition, Diamond will merge with and into Superior Well and will cease its separate corporate existence.

27.     Defendants Wallace, Stoelk, D. Snyder, M. Snyder, Neal, Staley, Mendicino and DiPaolo are collectively referred to herein as the "Individual Defendants."

### THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

28.     Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either:  (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors and/or officers may not take any action that:

      (a)     adversely affects the value provided to the corporation's shareholders;

      (b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

      (c)     contractually prohibits them from complying with their fiduciary duties;

      (d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

      (e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

29.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Superior Well, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

30.     The Individual Defendants are also obliged to honor their duty of candor to Superior Well shareholders by, *inter alia*, providing all material information to the shareholders regarding a scenario in which they are asked to vote their shares.  This duty of candor ensures that shareholders have all information that will enable them to make informed, rational and intelligent decisions about whether to vote their shares.

31.     Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

59.     On August 9, 2010, the Company announced the Proposed Acquisition to the

public via several SEC filings and a concomitant joint press release with Nabors which stated:

### Nabors Industries Ltd. and Superior Well Services, Inc. Announce Definitive Merger Agreement

… Nabors Industries Ltd. (Nabors) (NYSE: NBR) and Superior Well Services, Inc. (Superior Well Services) (NASDAQ: SWSI) today announced that they have entered into a definitive merger agreement whereby Nabors will acquire Superior Well Services. The agreement contemplates that Nabors will commence a tender offer for all outstanding shares of Superior Well Services common stock at a price of $22.12 per share in cash in accordance with the merger agreement. The transaction is valued at approximately $900 million.

Gene Isenberg, Nabors' Chairman and CEO, commented: "For some time now, we have evaluated integrating more service offerings into our business, particularly internationally. Although we expect this acquisition by itself to be significantly accretive to 2011 results, our major motivator was the opportunity to leverage this well respected franchise into a global force utilizing our extensive international footprint and resources.

"In addition to the upside associated with expanding internationally, we expect to derive significant synergies in North America by integrating pumping services with our drilling and workover offerings. The most readily identifiable economies will be derived from our own Oil and Gas entities, with further benefits dependent upon how quickly we can increase activity across more of our fleet. Superior Well Services' broad U.S. presence complements that of both our U.S. Land Drilling and Well-servicing operations and augments our expansion into areas such as the Marcellus shale region.

"Superior Well Services possesses one of the newest fleets in the industry with over 430,000 hydraulic fracturing horsepower. This high quality fleet is operated by a very capable, well managed organization that can quickly become a substantial unit of Nabors. This transaction also provides good value to the Superior Well Services stockholders as the offer price represents an attractive premium to the 30-day average closing stock price."

Superior Well Services' Chairman and CEO David Wallace said: "We are very pleased to be joining forces with Nabors. This complementary combination of the largest land drilling contractor in the world with a leader in technical pumping will make both organizations stronger and better able to meet our customers' needs not only in the U.S., but around the world. We believe this transaction will deliver an immediate and significant premium for our shareholders."

Holders of approximately 34% of Superior Well Services' outstanding shares of common stock have entered into agreements agreeing to tender their shares. Nabors expects to commence the tender offer promptly and expects the

offer to close by the end of the third quarter. Following completion of the tender offer, Nabors will acquire any remaining shares of Superior Well Services through a second-step merger at the same price paid in the tender offer.

Under the terms of the agreement approved by the boards of directors of both companies, the tender offer is conditioned on the tender of at least a majority of Superior Well Services' shares calculated on a fully diluted basis and other customary closing conditions, including the receipt of regulatory approvals. In addition, the merger agreement requires Superior Well Services to pay Nabors a termination fee of approximately $22.5 million and reimbursable expenses of up to $5 million in the event that the agreement is terminated for certain reasons.

32.     As part of the Merger Agreement, defendants agreed to numerous provisions intended to protect the deal which collectively operate to preclude any other offer to be made by a third party to acquire the Company.

33.     Section 2.4 contains a Top-Up Option ensuring that Nabors will acquire the requisite 90% of shares outstanding to commence a short form merger.  The Top-Up Option permits Nabors to acquire up to 90% plus one share and pursue a short form merger without a vote and without any requirement of establishing the adequacy of the Proposed Acquisition.  As explained above, the Top-Up Option is unduly coercive because of the affect it will have on shareholders that wish to seek an appraisal.  In an appraisal, a Court independently values a shareholder's holdings.  In assessing this calculation, the Court considers the number of the Company's shares outstanding.  Any appraisal action will likely require the Court to consider the additional stock issued by the Top-Up Option and its dilutive effect on the shareholder seeking appraisal.  The increase in the number of shares outstanding will likely necessitate the Court reduce the appraisal value to account for the additional stock.  Therefore, the Top-Up Option coerces shareholders to tender their stock now, rather than risk receiving a lower amount per share after the Company potentially issues a considerable amount of stock pursuant to the Merger Agreement.

- 10 -

34.     The Merger Agreement also contains a "no-solicitation" provision.  Section 6.5 prohibits Superior Well from "initiat[ing], solicit[ing] or knowingly facilitate[ing] or encourage[ing] any inquiry or the making of any proposal that constitutes a Takeover Proposal." While the Merger Agreement contains a "fiduciary out" clause that will allow the Board to talk to other potential acquirers, the benefit of this clause is illusory.  Superior Well can only talk with and provide information to any third-party bidder if the Board determines that it has received a "Superior Proposal" from that bidder, something exceedingly unlikely since the Board and the Company cannot provide this other suitor with nonpublic information.

35.     The Merger Agreement also imposes on the Company and its shareholders a $22.5 million termination fee and the reimbursement of expenses of up to $5 million to Nabors, totaling 3% of the overall equity value of the deal, in the event that Superior Well accepts a superior offer and terminates the Merger Agreement under certain circumstances.

**Self-Dealing**

36.     Because the Individual Defendants dominate and control the business and corporate affairs of the Company and have access to material nonpublic information concerning Superior Well's financial condition and business prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of the Company.  Therefore, it is a breach of duty for the Individual Defendants to pursue and execute any proposed transaction pursuant to which they will reap disproportionate benefits compared to shareholders.  Here, the Individual Defendants placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objections.

37.     The Proposed Acquisition is wrongful, unfair, and harmful to The Company's public shareholder, and represents an effort by the Individual Defendants to aggrandize their own

financial position and interests at the expense of and to the detriment of the Class members. Specifically, defendants are attempting to deny plaintiff and the Class their shareholder rights via the sale of the Company on terms that do not adequately value it.   Accordingly, the Proposed Acquisition will benefit defendants at the expense of the Company's public shareholders.

38.   As explained in the 14D-9, Superior Well's management and Board will have their Superior Well stock restricted stock subject to immediate vesting.  The following charts in the 14D-9 depict the number of restricted stock awards subject to immediate vesting:

| Name | Unvested Shares Outstanding as of August 6, 2010 (#) | Consideration Payable in Respect of Shares that Have Not Vested ($) |
|---|---|---|
| David E. Wallace | 32,950 | $728,854 |
| Jacob B. Linaberger | 23,300 | 515,396 |
| Rhys R. Reese | 23,300 | 515,396 |
| Daniel Arnold | 18,450 | 408,114 |
| Thomas W. Stoelk | 21,300 | 471,156 |
| Michael J. Seyman | 15,700 | 347,284 |
| Edward J. DiPaolo | 13,550 | 299,726 |
| Anthony J. Mendicino | 12,050 | 266,546 |
| Charles C. Neal | 12,050 | 266,546 |
| David E. Snyder | 12,050 | 266,546 |
| Mark A. Snyder | 12,050 | 266,546 |
| John A. Staley, IV | 12,050 | 266,546 |

39.   Finally, the Company's executive management, including defendant Wallace, is receiving lucrative severance packages based on the change of control provisions in their respective compensation agreements:

- 12 -

**Potential Payouts Upon Termination following the Completion of the Offer**

| Name | Benefit | Involuntary Termination After Change of Control(1)(2) |
|---|---|---|
| David E. Wallace | Salary | $ 1,020,000 |
| | Bonus | — |
| | Equity Compensation | — |
| | Medical and Dental Continuation Coverage | 39,482 |
| | Total | $ 1,059,482 |
| Jacob B. Linaberger | Salary | $ 720,000 |
| | Bonus | — |
| | Equity Compensation | — |
| | Medical and Dental Continuation Coverage | 39,482 |
| | Total | $ 759,482 |
| Rhys R. Reese | Salary | $ 640,000 |
| | Bonus | — |
| | Equity Compensation | — |
| | Medical and Dental Continuation Coverage | 39,482 |
| | Total | $ 679,482 |
| Thomas W. Stoelk | Salary | $ 240,000 |
| | Bonus | — |
| | Equity Compensation | — |
| | Medical and Dental Continuation Coverage | 8,844 |
| | Total | $ 248,844 |
| Daniel Arnold | Salary | $ 222,000 |
| | Bonus | — |
| | Equity Compensation | — |
| | Medical and Dental Continuation Coverage | 8,844 |
| | Total | $ 230,844 |
| Michael Seyman | Salary | $ 208,000 |
| | Bonus | — |
| | Equity Compensation | — |
| | Medical and Dental Continuation Coverage | 8,844 |
| | Total | $ 216,844 |

40.     These conflicts call into question the Board's independence and ability to exercise its fiduciary duty to act in the best interests of Superior Well shareholders and maximize shareholder value and exercise valid business judgment in connection with the Proposed Acquisition.

**The Failure to Maximize Shareholder Value**

41.     In order to meet their fiduciary duties, the Individual Defendants are obligated to maximize shareholder value, not structure a preferential deal for themselves.  Despite claiming that the $22.12 per share consideration is "attractive," the minimal 19% premium actually

represents a discount to the true value of the Company.  Indeed, according to Thompson/First Call, at least one analyst has placed a target price for Superior Well at $25.00 per share – well above the Proposed Acquisition consideration.  Further, analysts expected the Company's earnings growth to increase 575% in the 2011 fiscal year.

42.    These analysts' faith in the Company would have been rewarded, but for the Proposed Acquisition.  Following the announcement of the Proposed Acquisition, Superior Well announced blockbuster financial results for the second quarter of 2010.  The Company saw its revenues increase 42.7%, its net income increase by nearly $15 million, and its adjusted EBITDA increase nearly $24 million from the previous quarter.  The numbers are even more outstanding when compared to the Company's results a year ago.  Since then, the Company's revenues increase approximately 95%, net income increased $44 million, and adjusted EBITDA jumped $41.6 million.  In its press release, the Company announced:

**Superior Well Services, Inc. Announces Second Quarter 2010 Results**

… Superior Well Services, Inc. (Nasdaq: SWSI), a provider of wellsite solutions specializing in technical pumping and completion, down-hole surveying and fluid logistic services, today announced net income for the three months ended June 30, 2010 of $6.1 million, or $0.18 per diluted share, compared to a net loss of $37.9 million, or a $1.66 net loss per diluted share, in the same period in 2009.

The 2010 second quarter net income of $6.1 million, or $0.18 per diluted share, compares to a net loss of $8.7 million, or a $0.31 net loss per diluted share, in the previous quarter ended March 31, 2010.

Revenue in the second quarter of 2010 was $176.0 million, a 42.7% increase from the $123.3 million reported in the previous quarter and a 94.5% increase from the $90.5 million reported in the second quarter of 2009. Operating income for the second quarter of 2010 was $13.0 million compared to $10.4 million of operating loss for the previous quarter and $59.2 million of operating loss reported in the second quarter of 2009.

Adjusted EBITDA, a non-GAAP financial measure, totaled $34.3 million in the second quarter of 2010 compared to $10.4 million reported for the previous quarter and ($7.3) million reported in the second quarter of 2009. For our definition of Adjusted EBITDA, please see footnote 1. For a reconciliation of

- 14 -

Adjusted EBITDA to net income (loss), please see the non-GAAP financial measure table included in this press release.

43.     With the recovering economy and positive results, Superior Well's stock price has also risen steadily, outperforming the stock indices, as shown in the following chart:



44.     By announcing the Proposed Acquisition and its unfair consideration, defendants are preventing plaintiff and the Class for enjoying the Company's continued growth.  In addition, by announcing the Proposed Acquisition when they did, defendants deprived the Company's shareholders of the expected increase in the Company's stock value that would have followed the announcement of Superior Well's superior quarterly results.

**The Materially Misleading 14D-9**

45.     In connection with the Proposed Acquisition, defendants are also violating federal law and breaching their fiduciary duty of candor to the public shareholders of Superior Well by misrepresenting and failing to disclose material information.   The information concerning Simmons' fairness opinion is particularly egregious because the 14D-9 specifically states that "Simmons further believes that selecting portions of its analyses and the factors considered or focusing on information presented in tabular format, *without considering all analyses and*

*factors or the narrative description of the analyses*, could create a misleading or incomplete view of the processes underlying Simmons' analysis and opinion."   By omitting material information concerning these "analyses and factors," the 14D-9 presents Superior Well shareholders with just such a misleading and incomplete view of its fairness opinion. Specifically, the 14D-9 omits/or misrepresents the material information set forth below in contravention of §§14(e) and 20(a) of the 1934 Act.

46.   *The data and inputs underlying Simmons' Selected Companies Analysis*.   In defendants discussion of Simmons' Selected Companies Analysis on page 22 of the 14D-9, defendants fail to disclose: (i) the selection criteria for the companies chosen; (ii) the summary statistics for each company, including the specific ratios, enterprise values and adjusted book values for each company; and (iii) the implied multiples for each company.   Without this information, shareholders are unable to independently assess the factors underlying the analysis and whether Simmons' Selected Companies Analysis is an adequate measure of the value the public places on comparable companies.

47.   *The data and inputs underlying Simmons' Selected Transactions Analysis*.   In defendants discussion of Simmons' Selected Transactions Analysis on page 22-23 of the 14D-9, defendants fail to disclose: (i) which transactions were actually analyzed; (ii) the size of the different transactions; (iii) the nature of the consideration offered in the different transactions; and (iv) the value per unit of horsepower sold for each transaction.   Without this information, shareholders are unable to independently assess the factors underlying the analysis and whether the transactions in Simmons' Selected Transactions Analysis are comparable to the Proposed Acquisition.

48.    *The data and inputs underlying Simmons' Discounted Cash Flow ("DCF")* *Analysis*.  According to defendants' discussion of Simmons' DCF Analysis on page 23 of the 14D-9, Simmons considered three different projection cases, a "high case," a "base case," and a "low case."  Defendants fail to disclose the following concerning Simmons' DCF Analysis: (i) the basis for selecting of 13% to 15% and terminal EBITDA multiples of 4.0x to 6.0x for the base and low cases and 5.0x to 7.0x for the high case; and (ii) the bases for utilizing a range of perpetual growth rates of 10.0%, 7.5% and 5.0%.  Without this information, shareholders will be unable to independently assess the factors underlying the analysis and the primary assumptions used by Simmons in its DCF analysis.

49.    *The Company's financial projections for fiscal years 2011-2014*.  Defendants also fail to disclose the financial projections for fiscal years 2011-2014 utilized by Simmons in its DCF Analysis.  These financial projections are one of the key pieces of data underlying Simmons' DCF Analysis.  Without this information shareholders will be unable to independently assess the factors underlying the analysis and the primary assumptions used by Simmons in its DCF analysis.

50.    *The data and inputs underlying Simmons Transaction Premium Analysis*.  In defendants' discussion of Simmons' Transaction Premium Analysis on page 23-24 of the 14D-9, defendants fail to disclose: (i) which transactions were chosen; (ii) the date each transaction was announced and completed; (iii) the size of each transaction; (iv) the consideration for each transaction; and (v) the premium for each transaction to the target's previous day stock price and the target's projected EBITDA.  Without this information, shareholders are unable to independently assess the factors underlying the analysis and whether Simmons' Transaction Premium Analysis utilized comparable transactions to the Proposed Acquisition.

- 17 -

51.     *The Board's Retention of Simmons*.   In defendants' discussion of Simmons' retention by the Board on page 25 of the 14D-9, defendants fail to disclose: (i) the exact amount of the "significant portion" of Simmons' $9 million fee that is contingent on Nabors acquiring a majority of the outstanding shares of Superior Well; (ii) the "fixed fee" to be paid to Simmons for rending its fairness opinion; and (iii) the services previously rendered by Simmons for Superior Well, and the fees paid to Simmons for the same.   Without this information, shareholders cannot assess whether Simmons was motivated to give a particular fairness opinion for reasons other than the merits of the Proposed Acquisition, and what weight, if any, to place on the fairness opinion in deciding whether to tender their shares.

52.     *The Board's Valuation of the Company*.   The discussion of the sale process for the Company leading up to the Proposed Acquisition on pages 11-16 of the 14D-9 fails to disclose: (i) the Company's stand-alone valuation; (ii) why it demanded that Nabor's offer represented no less than a 20% one-day premium to the Company's trading price; (iii) the basis for Simmons' counter-proposal to Nabors valuing the Company at $24.00 per share; (iv) whether the Board considered other factors besides the Company's trading price in determining that Nabors' initiation offers were inadequate; (v) what constituted an "agreeable" indication of interest to the Board in July and August 2009; (vi) the basis for the Board's decision not to contact any potential financial buyers for the Company in July 2009; (vii) why Candidate A withdrew from the scheduled meeting with the Company's management in August 2009; (viii) the reasons that Candidate C was no longer interested in further discussions with Superior Well in September 2009; (ix) the "additional alternatives" considered by the Board in December 2009; (x) why the "seventh company's" indication was deemed inadequate by the Board; (xi) why only five of the six suitors for the Company submitted "agreeable indications of interest" and were

granted access to the virtual data room; (xii) why only four of the five remaining candidates in early April 2010 were invited to meet with management of Superior Well's fluid logistics business; (xiii) why the only Board member intimately involved in the business combination negotiations was DiPaolo; (xiv) the "various high-level matters" discussed between the parties' advisors in early July 2010; and (xv) the "several significant issues" that the parties still needed to resolve as of July 31, 2010, as of August 2, 2010, and as of August 4, 2010.  Without this information, shareholders are unable to assess whether the sales process was adequate and in turn, whether the Proposed Acquisition represents adequate value.

53.     *The Appraisal Process*.  On page 28 of the 14D-9, defendants state that "if the Merger is completed, stockholders who have neither voted in favor of the Merger nor consented thereto in writing, who timely submit a demand for appraisal in accordance with Section 262 of the [Delaware General Corporations Law ("DGCL")] and who otherwise comply with the applicable statutory procedures under the DGCL will be entitled to receive a judicial determination of the fair value of the Shares (exclusive of any element of value arising from the accomplishment or expectation of such merger) and to receive payment of such fair value in cash."  The 14D-9, however, fails to disclose that the Top-Up Option can cause considerable dilution of the non–tendering shareholders' stock.  In an appraisal proceeding, the Court will likely take this dilution into account and reduce the appraisal value of the non-tendered shares. Without this information, shareholders will be unable to access whether to seek an appraisal for their stock.

54.     The Individual Defendants were aware of their duty to disclose the foregoing material information in the 14D-9, and acted with at least negligence in failing to ensure that this material information was disclosed in the 14D-9.  Absent disclosure of this material information,

- 19 -

shareholders are unable to make an informed decision about whether to tender their stock, seek an appraisal, and/or whether to vote in favor of the Proposed Transaction, if such a vote occurs, and are thus threatened with irreparable harm.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of Superior Well stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

56.     The Class is so numerous that joinder of all members is impracticable. There are over 30 million shares of Superior Well common stock outstanding.

57.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether the defendants violated §§14(e) and 20(a) of the 1934 Act and SEC Rule 14a-9 by filing the materially misleading 14D-9;

(b)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(d)      whether the Individual Defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(e)      whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(f)      whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;

(g)      whether plaintiff and the other members of the Class are entitled to damages to compensate them for Defendants' breach of duty and violation of federal law; and

(h)      whether Superior Well, Nabors, and/or Diamond are aiding and abetting the wrongful acts of the Individual Defendants.

58.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

59.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

60.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

61.      Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

62.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Against the Individual Defendants and Nabors for Violations of
### §14(e) of the 1934 Act

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     During the relevant period, the Individual Defendants and Nabors disseminated the false and misleading 14D-9 specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.     The 14D-9 was prepared, reviewed, and/or disseminated by the Individual Defendants and Nabors.   It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's assets.

66.     In so doing, the Individual Defendants and Nabors made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(e) of the 1934 Act.   The Individual Defendants and Nabors were aware of this information and of their duty to disclose this information in the 14D-9.

67.     The Individual Defendants and Nabors were at least negligent in filing the 14D-9 with these materially false and misleading statements.

68.     The omissions and false and misleading statements in the 14D-9 are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Acquisition.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the 14D-9 and in other information reasonably available to shareholders.

69.     By reason of the foregoing, the Individual Defendants and Nabors have violated §14(e) of the 1934 Act.

70.     Because of the false and misleading statements in the 14D-9, plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants, Nabors, and Diamond for Violation of §20(a) of the 1934 Act**

71.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of Superior Well within the meaning of §20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or directors of Superior Well, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

73.     Each of the Individual Defendants, Nabors, and Diamond was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by plaintiff to be

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants for shareholders to tender their stock. They were thus directly involved in the making of this document.

75.     Nabors and Diamond also had direct supervisory control over composition of the 14D-9 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the 14D-9.

76.     In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants, Nabors, and Diamond were each involved in negotiating, reviewing and approving the Proposed Acquisition.  The 14D-9 describes the various issues and information that they reviewed and considered, descriptions which had input from both the directors, Nabors and Diamond.

77.     By virtue of the foregoing, the Individual Defendants, Nabors, and Diamond have violated §20(a) of the 1934 Act.

78.     As set forth above, the Individual Defendants, Nabors, and Diamond had the ability to exercise control over and did control a person or persons who have each violated §14(e) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act.

As a direct and proximate result of defendants' conduct, plaintiff and the Class will be irreparably harmed.

## COUNT III

### For Breach of Fiduciary Duty Against All Individual Defendants

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, candor, and independence owed to the public shareholders of Superior Well and have acted to put the interests of themselves and Nabors ahead of the interests of Superior Well's shareholders.

81.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in Superior Well.

82.     As demonstrated by the allegations above, the Individual Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Superior Well because, among other reasons, they failed to:

(a)     fully inform themselves of the market value of Superior Well before entering into the Merger Agreement;

(b)     exercise valid business judgment in connection with Merger Agreement;

(c)     act in the best interests of the public shareholders of Superior Well common stock;

(d)     maximize shareholder value;

- 25 -

(e)     obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Acquisition;

(f)     made materially misleading statements in and omitted material information from the 14D-9; and

(g)     act in accordance with their fundamental duties of good faith, due care and loyalty.

83.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

84.     As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the real value of their equity ownership of the Company.  Unless the tender offer and Proposed Acquisition are enjoined by the Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the members of the Class to the irreparable harm of the members of the Class.

85.     Plaintiff and the members of the Class have an inadequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

86.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against the Individual Defendants.  Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary

benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## COUNT IV

### For Aiding and Abetting Breach of Fiduciary Duty Against Superior Well

87.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

89.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

90.     Superior Well colluded in or added and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and members of the Class.

91.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT V

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against
### Defendants Nabors and Diamond

92.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

93.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

94.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

95.      Nabors and Diamond colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

96.      Nabors and Diamond participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  Nabors and Diamond obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  Nabors and Diamond will benefit, *inter alia*, from the acquisition of the Company at an inadequate and unfair price if the Proposed Merger is consummated.

97.      Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief and damages, in his favor and in favor of the Class and against defendants as follows:

A.      Declaring that this action is properly maintainable as a class action;

B.      Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of the Company's shareholders until the process for the sale or auction of the Company is completed and the highest possible value is obtained;

E.      Directing the Individual Defendants to exercise their fiduciary duty of candor by disclosing all material information concerning the Proposed Acquisition to the Company's shareholders;

F.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

G.      Awarding the plaintiff and the class appropriate damages;

H.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and experts' fees; and

I.      Granting such other and further equitable relief as this Court may deem just and proper.


### JURY TRIAL DEMANDED

The plaintiff respectfully demands trial by jury on all issues so triable.


Dated:  **August 31, 2010**                    Respectfully submitted,

                                               _____
                                               Vincent A. Coppola, Esquire
                                               Penn. Attorney #50181

                                               PRIBANIC & PRIBANIC
                                               513 Court Place
                                               Pittsburgh, PA  15219
                                               (412) 281-8844

                                               *Attorney for plaintiff*